No. 97-609

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 342

CONFEDERATED SALISH AND

KOOTENAI TRIBES,

Petitioners,

v.

BUD CLINCH, DIRECTOR, MONTANA

DEPARTMENT OF NATURAL RESOURCES

AND CONSERVATION, and THE STATE OF

MONTANA,

Respondents.

<u>ORIGINAL PROCEEDING</u>:

COUNSEL OF RECORD:

For Petitioners:

James H. Goetz (argued), Goetz, Madden & Dunn, P.C.;

Bozeman, Montana

John B. Carter (argued), Confederated Salish & Kootenai Tribes;

Pablo, Montana

For Respondents:

Hon. Joseph P. Mazurek, Attorney General; Harley Harris (argued),

Assistant Attorney General; Helena, Montana

Donald MacIntyre (argued), Department of Natural Resources

and Conservation; Helena, Montana

For Amici:

Jon Metropoulos, Gough, Shanahan, Johnson & Waterman, Helena, Montana;

Steve Kelly, Northern Cheyenne Tribe, Lame Deer, Montana; Lois J. Schiffer, Department of Justice, Environment & Natural Resources Division, Washington, D.C.; Holly Jo Franz, Gough, Shanahan, Johnson & Waterman, Helena, Montana; John E. Bloomquist, Attorney at Law, Helena, Montana;

Jeanne S. Whiteing, Whiteing & Smith, Boulder, Colorado, and James Raymond, City Attorney, Polson, Montana

Argued and Submitted: January 7, 1999

Decided: December 30, 1999

No

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶ The Petitioner, Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation have petitioned this Court to accept original jurisdiction and issue an order or other appropriate writ enjoining the Respondents, Montana Department of Natural Resources and Conservation and Bud Clinch, its director, from issuing water use permits on the Flathead Indian Reservation until such time as the tribe's water rights have been quantified. We accept jurisdiction and grant the relief requested.

¶ In its petition, the Tribes contend that following our decision in *In the Matter of the Application for Beneficial Water Use Permit Nos. 66459-76L, Ciotti; 64988-G76L, Starner; and Application for Change of Appropriation Water Right No. G15152-S76L, Pope* (1996), 278 Mont. 50, 923 P.2d 1073, which held that water use permits could not be issued on the reservation until the Tribes' reserved water rights had been quantified based on the terms of § 85-2-311(1)(e), MCA, the legislature passed and the governor signed, S. B. 97 which amended the relevant provision in § 85-2-311(1)(e), MCA, for the specific purpose of avoiding the result created by the *Ciotti* decision.

¶ The Tribes contend that the enactment of S.B. 97 violates Article IX, Section 3(1) of the Montana Constitution, which protects existing water rights, and prior decisions of this Court discussing the pervasive nature of the Tribes' water rights on the reservation.

¶ The Tribes' petition presents two issues:

1. Whether this is an appropriate case in which to exercise original jurisdiction?

2. Whether the Department should be enjoined from issuing further water use permits on the Flathead Reservation until the Tribes' rights are quantified?

# ISSUE 1

¶ Is this an appropriate case in which to exercise original jurisdiction?

¶ Exercise of original jurisdiction is provided for by Article VII, Section 2(1) of the Montana Constitution. However, we have previously held that we will not exercise original jurisdiction unless the applicant demonstrates that:

>   (1) where constitutional issues of major statewide importance are involved;
>
>   (2) where questions involved are purely legal questions of statutory or constitutional construction, and
>
>   (3) where, urgency and emergency factors exist making the normal appeal process inadequate.

*Stuart v. Department of Social and Rehabilitation Services* (1991), 247 Mont. 433, 439, 807 P.2d 710, 713.

¶ We have also held that this Court may issue declaratory judgments pursuant to the same constitutional authority. *See Grossman v. State Dep't of Natural Resources* (1984), 209 Mont. 427, 435, 682 P.2d 1319, 1323.

¶ The State of Montana on behalf of the Department contends that this is not an appropriate case for the exercise of original jurisdiction because a factual record is necessary in order to determine whether the Tribes' rights have been affected and the trial and appeal process is adequate for development of the factual and legal issues presented by the Tribes' petition.

¶ We conclude that this is an appropriate case in which to exercise original jurisdiction and entertain the Tribes' petition. The petition implicates Article IX, Section 3(1) of the Montana Constitution; tribal water rights are of statewide importance; the decisive issue in this case is purely legal or constitutional; and the normal litigation process is inadequate. To proceed through the trial courts could take years. During that time, any number of permits could be issued and water appropriated pursuant to those permits, when in fact we conclude that it is unlawful to do so.

# ISSUE 2

¶ Should the Department be enjoined from issuing further water use permits on the Flathead Reservation until the Tribes' rights are quantified?

¶ *In the Matter of the Application for Beneficial Water Use Permit Nos. 66459-76L, Ciotti; 64988-G76L, Starner; and Application for Change of Appropriation Water Right No. G15152-S76L, Pope* (1996), 278 Mont. 50, 923 P.2d 1073, we were asked to decide whether the Department had authority to grant new water use permits on the Flathead Indian Reservation prior to settlement or adjudication of the Tribes' water rights. We noted that the requirements for issuance of water use permits was set forth at § 85-2-311(1), MCA, and that subsection (e) of that statute required that an applicant demonstrate that:

> The proposed use will not interfere unreasonably with other planned uses or developments for which a permit has been issued or for which water has been reserved . . . .

*Ciotti*, 278 Mont. at 55, 923 P.2d at 1076.

¶ We explained that there is a difference between State appropriated water rights and Indian reserved water rights and to illustrate, pointed out that:

> In *State ex rel. Greely v. Confederated Salish and Kootenai Tribes of the Flathead Reservation* (1985), 219 Mont. 76, 89-90, 712 P.2d 754, 762, we noted that:
>
>> State appropriative water rights and Indian reserved water rights differ in origin and definition. State-created water rights are defined and governed by state law. Indian reserved water rights are created or recognized by federal treaty, federal statutes or executive order and are governed by federal law.
>
> . . . .
>
>> Appropriative rights are based on actual use. Appropriation for beneficial use is governed by state law. Reserved water rights are established by reference to the purposes of the reservation rather than to actual, present use of the water.

(Citations omitted.)

We also distinguished reserved rights on the basis that they need not be diverted from the stream when we observed that:

The right to water reserved to preserve tribal hunting and fishing rights is unusual in that it is non-consumptive. A reserved right for hunting and fishing purposes "consists of the right to prevent other appropriators from depleting the stream waters below a protected level in any area where the non-consumptive right applies." [*United States v.*] Adair [(9th Cir. 1983)], 723 F.2d [1394,] 1411 [*cert. denied*, 467 U.S. 1252, 104 S.Ct. 3536, 82 L. Ed.2d 841 (1984)].

The Supreme Court has also held that under the implied-reservation-of-water-rights doctrine, Indians are entitled to sufficient water "to develop, preserve, produce or sustain food and other resources of the reservation, to make it livable." *Arizona v. California* [(1963)], 373 U.S. [546,] 599-600 [83 S.Ct. 1468, 1497-98, 10 L.Ed.2d 542].

. . . .

The *Winters* Court held that reserved water on the Fort Belknap Reservation could be beneficially used for "acts of civilization" as well as for agricultural purposes. *Winters v.* [*United States* (1908)], 207 U.S. [564,] 576 [28 S.Ct. 207, 211, 52 L.Ed. 340]. It may be that such "acts of civilization" will include consumptive uses for industrial purposes. We have not found decisive federal cases on the extent of Indian water rights for uses classed as "acts of civilization."

It is clear, however, that Indian reserved water rights may include future uses. *Arizona v. California*, 373 U.S. at 600-01, 83 S.Ct. at 1498; *United States v. Ahtanum Irrigation District* (9th Cir. 1964), 330 F.2d 897, 914. Most reservations have used only a fraction of their reserved water. National Water Commission,

Water Policies for the Future 51-61 (1973). However, reserved rights may reflect future need as well as present use. For example, the "practically irrigable acreage" standard applies to future irrigation or reservation land, not present irrigation practices and current consumptive uses.

We explained that it is undisputed that the Tribes possess reserved water rights which the Tribes were then attempting to quantify through negotiations with the State of Montana pursuant to §§ 85-2-701 through -705, MCA and that "[u]ntil the formal negotiations are resolved, however, the extent of the Tribes' reserved water rights remains unknown. Although it is likely that the Tribes' rights are pervasive, reserved water rights are difficult to quantify." *See Ciotti*, 278 Mont. at 59, 923 P.2d at 1079.

¶ We held that because the Water Use Act requires that an applicant for a water use permit prove that it will not unreasonably interfere with the Tribes' reserved water rights and because of the nature of Indian reserved water rights:

[S]uch a showing cannot be made until the Tribes' rights are quantified by a compact negotiation pursuant to § 85-2-702, MCA, or by a general inter sese water rights adjudication.

*Ciotti*, 278 Mont. at 61, 923 P.2d at 1080. Therefore, we held that the Department did not have authority to issue water use permits on the reservation until quantification is complete. *Ciotti*, 278 Mont. at 61, 923 P.2d at 1080.

¶ In response to *Ciotti*, the legislature passed S.B. 97 which amended § 85-2-311, MCA, by eliminating the requirement in subparagraph (1)(e) that an applicant for water use permit prove that the proposed use will not interfere unreasonably with the use for which water has been reserved and instead substituted the following requirements:

Except as provided in subsections (3) and (4), the department shall issue a permit if the applicant proves by a preponderance of evidence that the following criteria are met:

(a) (i) there is water physically available at the proposed point of diversion in the amount that the applicant seeks to appropriate; and

(ii) water can reasonably be considered legally available during the period in which the applicant seeks to appropriate, in the amount requested, based on the records of the department and other evidence provided to the department. Legal availability is determined using an analysis involving the following factors:

(A) identification of physical water availability;

(B) identification of existing legal demands on the source of supply throughout the area of potential impact by the proposed use; and

(C) analysis of the evidence on physical water availability and the existing legal demands, including but not limited to a comparison of the physical water supply at the proposed point of diversion with the existing legal demands on the supply of water.

¶ "Legally available" is not defined in the Water Use Act other than in the circular three-part test which requires consideration of "legal demands."

¶ Section 85-2-311(1)(b), MCA, continues to require consideration of prior appropriators and state water reservations in the permitting process. It is clear from the statement of intent attached to S.B. 97 that the legislature's purpose for amending § 85-2-311, MCA, was to negate the protection for Indian reserved water rights previously provided for at subsection (e) as interpreted by the *Ciotti* decision. However, at the same time, § 85-2-102 (9), (now subsection (8)), MCA, which defines "existing water right" was amended to include "federal non-Indian and Indian reserved water rights created under federal law . . . ."

¶ Based on the amendments in S.B. 97 the Department, on August 21, 1997, issued a notice of intent to issue new water permits on the Flathead Reservation.

¶ In support of its petition the Tribes allege that because they possess reserved water rights which are pervasive, have not been quantified, and carry a priority date from at least the Treaty of Hellgate dated July 16, 1855, and because the nonconsumptive right includes the right to in-stream flow, the Tribes have the right to prevent other appropriators from depleting the stream's waters below a protected level which has not yet been determined and that because these rights are federally granted their reserved rights are protected by

law with or without the language in former subsection (e) of § 85-2-311(1), MCA. They contend that the legislature's effort to allow the issuance of permits in disregard of their reserved water rights violates Article IX, Section 3(1) of the Montana Constitution which protects existing water rights.

¶ The Tribes contend that the fact that permits are provisional pursuant to § 85-2-101(5), MCA, does not protect them because § 85-2-314, MCA, conditions any permit on commencement of appropriation and application of water to a beneficial use within the time provided for in the permit. The Tribes contend that any use of water federally reserved for Indians, whether temporary or otherwise, adversely affects their interests and is therefore unlawful.

¶ The Tribe also makes numerous other constitutional arguments. However, we limit our discussion and analysis to Article IX, Section 3(1) of the Montana Constitution.

¶ The Department concedes that the protection of existing rights in Article IX, Section 3 (1) of the Montana Constitution includes water rights reserved for Indian reservations. However, it contends that those reserved water rights have not been affected by S.B. 97, but must now be considered in that part of the analysis which requires that water be "legally available" and that at any rate any permit issued is provisional. The Department contends that it has the same statutory obligation to consider reserved Indian water rights pursuant to the new statutory framework that it had prior to S.B. 97. Finally, the Department contends that there are some uses which would not diminish in-stream flow and that, therefore, use permits could be issued without affecting reserved Indian water rights regardless of the quantification of those rights. We will consider the Department's last argument first.

¶ The idea that permits can be issued to use water on reservations where that water may have been reserved for the Tribes who occupy those reservations without interfering with tribal rights, ignores the distinction we made in *State ex rel. Greely v. Confederated Salish and Kootenai Tribes of the Flathead Reservation* (1985), 219 Mont. 76, 712 P.2d 754, between appropriative water rights provided by Montana's Water Use Act and Indian reserved water rights.

> Appropriative rights are based on actual use. Appropriation for beneficial use is governed by State law. Reserved water rights are established by reference to the purposes of the reservation rather than to actual, present use of the

water.

*Greely*, 219 Mont. at 90, 712 P.2d at 762.

¶ We, furthermore, stated that, "Indian reserved water rights are 'owned' by the Indians." *Greely*, 219 Mont. at 97, 712 P.2d at 767. Therefore, because under federal law, Indian tribes have an ownership interest in the water reserved for them and because that interest does not depend on use of the water it is unpersuasive that the State's permitting process might allow uses of Indian reserved water which in the long-term will not diminish in-stream flows.

¶ Nor do we agree that the provisional nature of permits issued by the Department is determinative. As noted by the Tribes, § 85-2-314, MCA, provides in relevant part that:

> If the work on an appropriation is not commenced, prosecuted, or completed within the time stated in the permit or an extension thereof or if the water is not being applied to the beneficial use contemplated in the permit . . . , the department may, after notice, require the permittee to show cause why the permit should not be modified or revoked.

In other words, use of water which may have been reserved by federal law to the Tribes is no less impermissible simply because it is temporary and can be terminated following final quantification of the Tribes' right by adjudication or negotiation.

¶ The dispositive question is whether S.B. 97 did in substance eliminate the former protection of Indian reserved rights provided for by § 82-5-311(1)(e), MCA (1995), as the Tribe contends or whether it made no substantive change as the Department contends. Permits are still limited to water which is "legally available." However, legal availability is not defined. Our effort to interpret "legal availability" is complicated in this case by two competing rules of statutory construction. On the one hand, we are guided by the principle that "where two constructions of a statute are possible, one of which would render the Act unconstitutional, and the other sustain its validity, the latter interpretation must be adopted." *City of Phillipsburg v. Porter* (1948), 121 Mont. 188, 194, 190 P.2d 676, 679.

¶ On the other hand, we are told that "[i]n the construction of a statute, the intention of the legislature is to be pursued if possible." Section 1-2-102, MCA.

¶ It is clear from the statement of intent to which we previously referred that the legislature intended by S.B. 97 to allow the Department to issue water use permits prior to the quantification of the Tribes' reserved water rights which we held that it could not do in *Ciotti*. However, it is also clear that to issue water use permits on the Flathead Reservation prior to the quantification of the Tribes pervasive reserved right requires use of water which may belong to the Tribe and would, therefore, violate Article IX, Section 3(1) of the Montana Constitution which protects existing water rights whether adjudicated or unadjudicated and which the State concedes includes those rights reserved by federal law to Indian tribes.

¶ We conclude that it is preferable to construe § 85-2-311(1), MCA, in a manner which sustains its constitutional validity and that to do so requires that we interpret "legally available" to mean there is water available which, among other things, has not been federally reserved for Indian tribes. Therefore, we hold, as we did in *Ciotti* that the Department cannot determine whether water is legally available on the Flathead Indian Reservation, because the Department cannot determine whether the issuance of those permits would affect existing water rights until the Tribe's rights are quantified by compact negotiation pursuant to § 85-2-702, MCA, or by a general inter sese water rights adjudication. Accordingly, we order that the Department not issue further water use permits on the Flathead Reservation until the Tribes' rights have been quantified.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ THOMAS M. McKITTRICK

The Hon. Thomas. M. McKittrick

Judge of the District Court,

sitting for Justice W. William Leaphart

/S/ JEFFREY M. SHERLOCK

The Hon. Jeffrey M. Sherlock,

Judge of the District Court

sitting for Justice Karla M. Gray

Judge Roy C. Rodeghiero dissenting:

¶ I dissent. The majority is, in effect, entering a permanent injunction without holding a factual hearing. I would not accept original jurisdiction because a factual hearing would likely demonstrate that the majority's decision is too broad. This case involves more than pure legal questions of statutory or constitutional construction.

¶ The Affidavit of Jack Stults, Administrator of the Water Resources Division of the DNRC provides several examples that illustrate the existence of factual scenarios that would protect (or even enhance) reserved rights through a change in an existing right or the permitting of a new use on a source of supply. (*See* DNRC's Brief in Response to Application for Original Jurisdiction) Accepting original jurisdiction and issuing a decision without allowing water users to present a factual record is unwarranted and premature. The normal appeal process is adequate to resolve those issues.

¶ According to its Amicus Brief, the City of Polson has experienced population growth of

31.5% between 1990 and 1996. Polson has been forced to issue a moratorium on new subdivision approvals within the City service area because its application to the DNRC for a permit to drill an additional water well is on hold. (*See* Amicus Curiae Brief of the City of Polson)

¶ The majority's holding apparently precludes DNRC from issuing permits for groundwater use in this fast growing area of the state even though uncertainty exists as to whether groundwater is included within the reserved water rights doctrine. *See Big Horn River System* (Wyo. 1988), 753 P.2d 76, 99, *cert. denied*, 488 U.S. 1040, 109 S.Ct. 863, 102 L.Ed.2d 987 (1989), holding that groundwater is not included in the doctrine, and *In Re the General Adjudication of All Rights to Use Water in the Gila River System and Source* (Ariz. 1999), 1999 Ariz. LEXIS 116, holding that a reserved right to groundwater may only be found where other waters are inadequate to accomplish the purpose of a reservation. Without analysis, the majority apparently assumes that groundwater is included within the Tribes' reserved water right.

¶ The practical consequences of the majority's decision will be significant and will deprive some Montana citizens of one of life's basic necessities, the use of water. Pervasive, unquantified Indian and non-Indian reserved water right claims exist through out Montana. The broad sweep of the majority decision issued in a factual vacuum is not appropriate.

¶ It is commonly known that millions of acre feet of water flow out of Montana each year for appropriation and permitting by down stream states. It cannot be assumed that all the water within the confines of the Flathead Reservation is solely the Tribes' Reserved water right. Surely there must be some water available in this area for domestic uses. At a minimum, ground water should not be foreclosed from beneficial use by all the citizens within the boundaries of the Flathead Reservation.

¶ The concerns of the Tribes should be addressed on a case by case basis allowing interested persons the opportunity to address the factual issues in an administrative proceeding before the DNRC. While the Tribes' reserved rights are being quantified, the provisional nature of the permits protect the Tribes' reserved rights. Junior appropriators take their rights with constructive notice of the conditions existing at the time of their appropriation. *Cate v. Hargrave* (1984), 209 Mont. 265, 271, 680 P.2d 952.

¶ Therefore, I respectfully dissent.

/S/ ROY C. RODEGHIERO

The Honorable Roy C. Rodeghiero,

Judge of the District Court

sitting for Chief Justice J. A. Turnage