JUSTICE NELSON
specially concurs:
¶60 I concur in our Opinion. The rules of the trilogy of State ex rel. Greely v. Confederated Salish and Kootenai Tribes (1985), 219 Mont. 76, 712 P.2d 754, Matter of Beneficial Water Use Permits (1996), 278 Mont. 50, 923 P.2d 1073 (Ciotti); and Confederated Salish & Kootenai Tribes v. Clinch, 1999 MT 342, 297 Mont. 448, 992 P.2d 244, could not be more explicit: (a) The Montana Water Act, Title 85, Chapter 2, Montana Codes Annotated, is adequate to adjudicate Indian reserved water rights only to the extent that it recognizes, preserves and protects the fundamental legal differences between those rights and state appropriative rights; and (b) because of these fundamental legal differences the State may not process or issue beneficial water use permits on the Flathead Indian Reservation until Tribal water rights are quantified by a compact negotiation or by a general inter sese water *438 rights adjudication.
¶61 These rules do not originate in rocket science: Indians own their reserved water rights; those rights are superior to state appropriative water rights; to date those reserved water rights have not been quantified as to amount or priority on the Flathead Indian Reservation; therefore, the State cannot grant to some third party a right to appropriate or use water that the State may not own. Furthermore, and like it or not, unless Congress or the United States Supreme Court changes the laws and federal jurisprudence in which this Court’s trilogy of cases is grounded, no amount of statutory finessing or mental legerdemain is going to change these principles.
¶62 Indeed, the Department of Natural Resources and Conservation (DNRC) was put on notice that it had lost the permit-issuing battle as early as 1987, two years after Greely, when District Judge Gordon Bennett stated in United States and Montana Power Co. v. Department of Natural Resources (Don Brown) (D. Mont. June 15, 1987), No. 50612:
[there is] only one way to determine if an unappropriated water right exists in a source of supply: decide how much water is available and how much of it has been appropriated. This obviously requires quantification of existing rights. There is, likewise, only one way to determine whether the water rights of prior appropriators will be adversely affected by additional appropriation. You must begin by determining what the water rights of the prior appropriators are. In either case, the need to determine existing water rights is inescapable ....
Ciotti, 278 Mont. at 62-63, 923 P.2d at 1081 (Nelson, J., concurring).
¶63 Unfortunately, Judge Bennett’s legally correct, common-sense conclusion was either forgotten or ignored when, in 1990, DNRC’s director determined that the agency had jurisdiction to regulate any “surplus water” on fee land even though Tribal reserved water rights had not been quantified. Ciotti, 278 Mont. at 53, 923 P.2d at 1075. The obviously glaring flaw in this conclusion is that, until Indian reserved water rights are quantified, no one knows whether there is any “surplus water” to regulate. For all any of us know, there may be no water left to appropriate on the Flathead Reservation, because the Indians own it all.
¶64 That the Legislature and Executive branches do not seem to get it, is disappointing, though not particularly surprising given what presumably is intense political pressure for non-Indian residential and commercial development on the Flathead Reservation. That, however, does not justify the apologetics for those branches of government and the inflammatory rhetoric that characterizes the dissent-an opinion *439 which, uncharacteristically for its author-is totally devoid of any reasoned legal analysis.
¶65 If, as the dissent states, this Court’s trilogy of cases is “legally artificial,” then the bench, bar and public are owed a legal explanation and analysis as to why that is so. If, as the dissent postures, there is a “crisis” and “calamity” of “monumental” proportions threatening “civilization’s advancement and, indeed, its survival” on the Flathead Reservation, then, to be fair and intellectually honest, the dissent should be prepared to demonstrate unequivocally why this Court’s prior opinions and instant decision are legally incorrect and how we have erred in applying the clearly established legal principles and the extensive body of federal law and jurisprudence that govern Indian reserved water rights-principles, law and jurisprudence which, incidentally, this Court did not create, but is, nonetheless, constitutionally obligated to follow.
¶66 As written, the dissenting opinion will accomplish little more than provide sound bites for media; further strain relations between Indians and non-Indians and the Tribal and State governments; and provide fodder for those who, as a matter of course and in furtherance of their own misguided agendas, misrepresent to the public the law and this Court’s opinions. More to the point, instead of railing against settled law, the dissent’s frustration might be more profitably directed towards encouraging the State to put its unqualified efforts into quantifying the Tribe’s reserved water rights using the legal tools provided, instead of constantly trying to devise statutes to thwart those rights.
¶67 I concur in the Court’s Opinion.